**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Robinson; Christine Robinson, | No. CV 09-2066-PHX-JAT |
| Plaintiffs, | **ORDER** |
| vs. | |
| Wells Fargo Bank, N.A., Michael A. Bosco, Jr. | |
| Defendants. | |

Currently pending before the Court is Defendant's Motion to Dismiss Second Amended Complaint. (Doc. #39.) For the reasons given below, the Court will grant the Motion.

**I. BACKGROUND**

Plaintiffs Michael and Christine Robinson purchased real property located at 42968 N. Challenger Trail, Anthem, Arizona 85086 (the "Property") in early 2005. (Motion to Dismiss, Doc. #39, Exs. A & B.)[1] Shortly thereafter, Plaintiff Michael Robinson quitclaimed

---

[1] The Court can consider the Deeds, Notes, and other loan origination documents attached as Exhibits to the Motion to Dismiss without converting the Motion to a motion for summary judgment because Plaintiffs' claims necessarily rely on those documents and Plaintiffs do not dispute the documents' authenticity. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1997), superseded by statute on other grounds, as stated in *Abrego v. The Dow Chem. Co*, 443 F.3d 676 (9th Cir. 2006). Further, the Court can take judicial notice of any Exhibits that are matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

1 his marital interest in the property to Plaintiff Christine Robinson. (Doc. #39 Ex.B.) But in April of 2006, Mrs. Robinson conveyed a marital interest in the Property back to Mr. Robinson. (Doc. #39 Ex.C.)

The purchase of the Property was financed with a mortgage from Union Federal Bank of Indianapolis in the amount of $172,000, evidenced by a Promissory Note (the "Note") and a recorded Deed of Trust (the "Deed of Trust"). (Doc. #39 Exs. D&E.) The Deed of Trust named Lee Crosby, Attorney, as Trustee. (Doc. #39 Ex.D.) The executed Deed of Trust contained a provision allowing non-judicial foreclosure in the event of default. (Doc. #39 Ex.D §22.) The Deed of Trust also contained a section providing that the Note (or a partial interest in the Note) and Deed of Trust could be sold one or more times without prior notice to the Borrower. (Doc. #39 Ex.D §20.)

At some point, Defendant Wells Fargo assumed servicing rights for the Plaintiffs' mortgage. Because Plaintiffs defaulted on the Note, Wells Fargo commenced nonjudicial foreclosure on the Property pursuant to the Deed of Trust. (Doc. #39 Ex.D §22.)

In May 2006, an assignment was recorded conveying the Deed of Trust to Mortgage Electronic Registration Systems, Inc. ("MERS"). (Doc. #39 Ex.F.) In June 2009, MERS recorded an assignment of the Deed of Trust and Note to Wells Fargo as Attorney-in-Fact for U.S. Bank, N.A. (Doc. #39 Ex.G.) Attorney Mark Bosco, acting by limited power of attorney, then recorded a Substitution of Trustee appointing Michael A. Bosco Jr. as Successor Trustee under the Deed of Trust. (Doc. #39 Ex.H.) Michael Bosco then recorded a Notice of Trustee's Sale. (Doc. #39 Ex.I.) The Trustee's Sale took place on November 23, 2009, which resulted in a conveyance of the Property to Funk Family Enterprises for $112,100. (Doc. #23-1, p.7.)

Plaintiffs filed this case in state court on September 14, 2009. Wells Fargo removed to this Court on October 1, 2009. Wells Fargo filed a Motion to Dismiss on October 8, 2009. (Doc. #12.) Plaintiffs opposed that motion. (Doc. #20.)

On January 4, 2010, Plaintiffs moved to join Funk Family Enterprises as a defendant. (Doc. #23.) The Court interpreted that motion as a motion to amend the complaint to add an

additional defendant. (Doc. #25, p.1.) The Court pointed out that Plaintiffs could amend their Complaint once a matter of right pursuant to Rule of Civil Procedure 15(a) because the Defendants had not yet filed a responsive pleading.

Plaintiffs thereafter filed a First Amended Complaint, but named only Wells Fargo as a defendant. (Doc. #26.) Before Defendant filed a response to the First Amended Complaint, Plaintiffs filed the Second Amended Complaint (the "SAC").[2] (Doc. #28.) Plaintiffs named Wells Fargo and Funk Family Enterprises as defendants in the SAC. (Doc. #28.)

Plaintiffs later moved to voluntarily dismiss Funk Family Enterprises as a defendant. (Doc. #33.) The Court granted the motion to dismiss Funk Family Enterprises. (Doc. #35.) The Court also denied the original motion to dismiss (Doc. #12) as moot because, after Plaintiffs filed the SAC, the original motion no longer responded to the operative pleading. (Doc. #36.) Defendant Wells Fargo filed the pending Motion to Dismiss the Second Amended Complaint (Doc. #39) on February 22, 2010.

Plaintiffs moved to dismiss Michael A. Bosco Jr. as a defendant on March 31, 2010 (Doc. #44.) The Court ruled that "to the extent an order of this Court is required to dismiss Michael A. Bosco Jr. from this action, Plaintiffs' Motion to Dismiss . . . Michael A. Bosco, Jr., is GRANTED." (Doc. #45.) The Court included the qualifier because the Court did not need to dismiss Michael A. Bosco. When Plaintiffs filed the First Amended Complaint and then the Second Amended Complaint without naming Michael A. Bosco as a defendant, Mr. Bosco ceased to be a party to the case.[3] *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990)("The fact that a party was named in the original complaint

---

[2] The Court notes that Plaintiffs filed the SAC without leave of the Court, which Plaintiffs should have sought because they already had amended their complaint once as a matter of right. Nonetheless, the Court hereby grants Plaintiffs leave to amend and accepts the SAC (Doc. #28) as the operative complaint in this case.

[3] After the Court's Order granting Plaintiffs' motion to voluntarily dismiss Funk Family Enterprises, Wells Fargo is the sole remaining Defendant in this case.

- 3 -

1 is irrelevant; an amended pleading supersedes the original.").

## II. STANDARD OF REVIEW

The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. At 1949. Facial plausibility exists if the pleader pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. ANALYSIS AND CONCLUSION

#### A. Original Complaint

Most likely out of an abundance of caution, Wells Fargo moves to dismiss the claims in the original complaint that Plaintiffs did not re-allege in the SAC. Wells Fargo does not need to move to dismiss those claims because Plaintiffs waived them by failing to re-allege them in the SAC. *See, e.g., King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987)("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."). Once a party files an amended pleading, the original pleading no longer performs any function and thereafter is treated as "non-existent." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). "The rationale behind this rule is stated bluntly in *Studio Carpenters Local Union NO. 946 v. Loew's, Inc*.: 'If appellant desired to rely upon the original complaint, it should have refused to plead further.'" *Marx v. Loral Corp.*, 87 F.3d 1049, 1055 (9th Cir. 1996)(quoting *Studio Carpenters Local Union No. 946 v. Loew's, Inc.*, 182 F.2d 168, 170 (9th Cir. 1950)). An amended pleading cannot incorporate by reference any part of the preceding pleading, including exhibits. L.R.Civ.P.15.1; *see also Dowdy v. Raman*, 2008 WL 1901330, *3 (E.D. Cal. 2008)(stating that an amended pleading must be complete

in itself without reference to a prior, superseded pleading).

Plaintiffs alleged the following causes of action in their original complaint, but did not re-allege them in the SAC: "Cause of Action and Claim for Usury," "Cause of Action and Claim for Ultra Vires," "Fraudulent Inducement," "Cause of Action for Cancellation Return Promissory Note for Cancellation," "Civil RICO," and a cause of action for TILA and RESPA violations. (Doc. #1-1.) The Court deems those causes of action waived because Plaintiffs did not re-allege them in the SAC.[4] *See, e.g., King*, 814 F.2d at 567 ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."). The Court therefore need not address the merits of those claims here.

Nor will the Court grant Plaintiffs leave to amend the SAC to re-allege those claims because granting leave to amend would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962)(A court does not have to grant leave to amend if amendment would prove futile). For all the reasons stated in Defendant's Motion and Reply, the Court finds that Plaintiff's claims for usury, ultra vires, fraudulent inducement, cancellation return promissory note for cancellation, civil RICO, and for TILA and RESPA violations found in the original complaint would be subject to dismissal. And the Court, "does not err in denying leave to amend where the amendment would be futile . . . or would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citations omitted).

**B. Claims in the SAC**

The Court will now address the claims actually alleged by Plaintiffs in their Second Amended Complaint.

**1. Wrongful Foreclosure**

The Court interprets the Plaintiffs' claims in Count I as an attack on MERS and as a holder in due course/show-me-the-note argument. Plaintiffs claim that they never consented to the subsequent assignments of their Note and Deed, that MERS is some sort of straw man

---

[4]Plaintiffs did not re-allege the claims through incorporation by inserting the following preamble in the SAC: "Plaintiffs, and for their Second Amended Complaint, . . . add the following claims to their original Complaint."

- 6 -

with no rights, and that Wells Fargo did not have the right to institute a Trustee Sale of the Property because Wells Fargo did not possess the original Promissory Note.

First, Plaintiffs did consent to the assignment of their Note and Deed of Trust without prior notice by entering into the Deed of Trust, which contained a subsequent sale/bundling provision. (Doc. #39 Ex.D §20.) Second, the undersigned previously has rejected attacks on the MERS system. *See Cervantes v. Countrywide Homes Loans, Inc.*, 2009 WL 3157160, at *10-11 (September 24, 2009).[5] Like the plaintiffs in *Cervantes*, the Plaintiffs here have failed to demonstrate how the MERS system's alleged status as a "sham" beneficiary affected their obligation to repay the Note. *Id*. at *10.

Third, this Court repeatedly has rejected debtors' attempts to assert the so-called "show me the note" theory. *See, e.g., Diessner v. Mortgage Elec. Registration Sys.*, 618 F.Suppp.2d 1178, 1181 (D.Ariz. 2009); *Mansour v. Cal-W. Reconveyance Corp.*, 618 F.Supp.2d 1178, 1181 (D.Ariz. 2009). Plaintiffs claim that Defendant was not a "holder in due course" because it did not possess the original Note and therefore could not foreclose on the Property. But Arizona's non-judicial foreclosure statute does not require presentation of the original note before commencing a trustee's sale. *Diessner*, 618 F.Supp.2d at 1187.

Because this case involves the non-judicial foreclosure of a real estate mortgage under an Arizona statute that does not requirement presentation of the original note, Count I of Plaintiffs' SAC fails to state a claim upon which this Court may grant relief. The Court therefore grants the Motion to Dismiss Count I.

**2. Breach of Contract**

Plaintiffs' Count II breach of contract theory is premised on the idea that various recent statutes and programs enacted to stimulate economic recovery, specifically the

---

[5]The undersigned wrote in *Cervantes*: "Plaintiffs allege that MERS never owns or acquires any beneficial interest in any of the loans it is named as the beneficiary under a deed of trust. As such, Plaintiffs allege that the MERS system is a "sham" beneficiary. Plaintiffs, however, have not directed this Court to any Arizona case that finds that the MERS system is fraudulent." 2009 WL 3157160, *10.

Troubled Asset Relief Program ("TARP"), provide a private right of action against lenders and loan servicers. Plaintiffs argue that because Defendant Wells Fargo received TARP funds, Defendant had a duty to renegotiate Plaintiffs' mortgage and stay foreclosure on the Property. Plaintiffs have not identified a contract between themselves and Defendant that Defendant allegedly breached. Instead, Plaintiffs seem to argue that Defendant breached an agreement with the United States Treasury.

Plaintiffs cite the Emergency Economic Stabilization Act of 2008 ("EESA") and programs instituted pursuant to EESA as authority for their breach claim. President Bush signed EESA into law on October 8, 2008. 122 Stat. 3765 (codified at 12 U.S.C. §5201 *et seq.*). Section 101 of EESA authorized the Secretary of the Treasury (the "Secretary") to create TARP to purchase troubled assets from financial institutions. 12 U.S.C. §5211. Among other provisions, Section 109 of EESA requires and permits the Secretary to take certain measures to encourage and facilitate loan modifications.

As authorized by EESA, the Secretary established the Home Affordable Modification Program ("HAMP"). On April 13, 2009, Wells Fargo executed a Commitment to Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008 (the "Agreement"). The Agreement applies to non-Fannie Mae/Freddie Mac mortgages and generally provides that Wells Fargo will perform loan modification and other foreclosure services as directed by the Treasury.

On May 20, 2009, President Obama signed into law the "Helping Families Save Their Homes Act of 2009," Pub. L. No. 111-22, 123 Stat. 1632 (the "Helping Families Act"). The Helping Families Act led to a variety of new measures designed to reduce foreclosures, preserve home ownership, and fight the contraction of the real estate market. Congressional findings stated that it would be necessary to allow loan servicers to enter into loan modifications consistent with guidelines from the Secretary under EESA. Passage of the Helping Families Act caused a moratorium on certain foreclosure proceedings and sales "until the foreclosure mitigation provisions . . . and the President's 'Homeowner

Affordability and Stability Plan" have been implemented and determined to be operational." *Id.* §401(a).

Because Plaintiffs base Count II on Defendant's receipt of TARP funds, the Court will analyze whether TARP creates a private right of action against financial institutions. "The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private right of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)(internal quotation omitted).[6] "Instead, the statute must either explicitly create a right of action or implicitly contain one." *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1230 (9th Cir. 2008).

A statute expressly creates a right of action when the statute contains language that defines the cause of action. *Id.* Statutes that explicitly provide a private right of action identify the people allowed to bring suit, those that are potentially liable, the forum for the suit, and the potential remedy available. *See id.* (holding that §304 of the Sarbanes-Oxley Act, which does not give those details, does not provide an express private right of action).

In creating TARP, Congress expressly gave a private right of action to those specifically harmed by the Secretary to challenge the actions of the Secretary. 12 U.S.C. §5229. This right of action is limited to causes of action for which there is no other adequate remedy in court. 5 U.S.C. §704. While Congress created a right to sue the Secretary, the judicial review section of TARP never mentions a right of action against non-governmental entities, such as financial institutions receiving TARP funds. The Court therefore finds that Congress did not create an express right of action against TARP funds recipients. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D.Cal. 2009).

Because the Court finds that no express right of action against TARP fund recipients exists, the Court must consider whether TARP implies such a right. *Univ. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 770 (1981). The Court must proceed with caution in deciding

---

[6]The Court makes no determination in this Order regarding whether Wells Fargo actually violated any statutes.

whether a statute provides an implied private right of action because "Congress rather than the courts controls the availability of remedies for violations of statutes." *Wilder v. Virginia Hosp. Assn.*, 496 U.S. 498, 509 n.9 (1990). A court can find an implied right of action "only if the underlying statute can be interpreted to disclose the intent to create one." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta Inc.*, 552 U.S. 148, 164 (2008)(internal citations omitted).

The Supreme Court has created a four-factor test for determining whether an implied right of action exists in a statute that does not expressly provide for one. *Cort v. Ash*, 422 U.S. 66, 78 (1975). In determining whether a private right of action is implied, the Court considers:

> (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted-that is, whether the statute creates a federal right in favor of the plaintiff; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether the cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*In re Digimarc Corp.*, 549 F.3d at 1231 (internal citations and quotations omitted). The Court, however, does not afford all of the factors equal weight. *Touche*, 442 U.S. at 575. The second factor – Congressional intent – is the determinative factor. *Id.*; *see also Thompson v. Thompson*, 484 U.S. 174, 189 (1988)(Scalia, J., concurring)("[W]e effectively overruled the *Cort v. Ash* analysis in [*Touche*], . . . converting one its four factors (congressional intent) into the determinative factor."); *Stupy v. United States Postal Serv.*, 951 F.2d 1079, 1081 (9th Cir. 1991)(holding that courts do to need to evaluate the remaining *Cort* factors if they conclude that Congress did not intend to create a private right of action).

In analyzing whether a private right of action was intended under a statute, courts look to *Alexander v. Sandoval*, 532 U.S. 275 (2001) for guidance. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* at 286. A court's task is to interpret the statute to determine whether the statute displays an

intent not just to create a private right, but also a private remedy. *Id*. Without statutory intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id*. at 286-87.

The Court in *Sandoval* began and ended its search for Congressional intent with the text and structure of the statute at issue. *Id*. at 288.[7] The Court will do the same here. TARP's provisions focus on the parties regulated and the agencies tasked with overseeing the regulations, rather than the individuals protected, and "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Id*. at 289. (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

Further, Congress has demonstrated in TARP that it knows how to create a private cause of action if it intends to do so. Congress expressly gave a private right of action against the Secretary to persons directly harmed by the Secretary's actions. It is highly unlikely that "Congress absent mindedly forgot to mention an intended private action" against TARP fund recipients. *See Transamerica Mortg. Advisors Inc. v. Lewis*, 444 U.S. 11, 20 (1979)(internal quotations omitted). By providing a cause of action against the Secretary, but not mentioning a cause of action against non-governmental entities, Congress demonstrated its intent to limit private action under TARP solely to actions against the Secretary and not to extend any obligations or liabilities to those receiving TARP funds. *Pantoja*, 640 F.Supp.2d at 1185; *see also Touche*, 442 U.S. at 572 ("when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly").

Because the Court determines that Congress did not intend to create a private cause of action against TARP fund recipients, the Court does not need to consider any of the other

---

[7]When analyzing Congressional intent to create a private right of action, courts limit their analysis to three relevant sources: 1) rights-creating language in the statutory text; 2) the overall statutory structure; and, *only if* the statutory text and structure do not yield a definitive answer, 3) the legislative history of the statute. *In re Digimarc Corp.*, 549 F.3d at 1230-34.

*Cort* factors. *Stupy*, 951 F.2d at 1081. The Court finds that TARP does not create, either explicitly or implicitly, a private right of action against TARP fund recipients. This conclusion is supported by the decisions of other courts that have analyzed whether TARP and other economic rescue legislation provide private rights of action against non-governmental entities. *See, e.g., Logan v. U.S. Bank Nat'l Assoc.*, 2010 WL 1444878 (C.D. Cal. April 12, 2010)(holding that section 702 of the Helping Families Save the Home Act does not provide a private cause of action); *Santos v. Countrywide Home Loans*, 2009 WL 3756337 (E.D.Cal. Nov. 6, 2009)(holding that the plaintiff had no private right of action under EESA or the Hope for Homeowners Act); *Pantoja* (holding no private right of action against TARP fund recipients).

Plaintiffs' breach of contract claim fails as a matter of law because 1) TARP does not create a private right of action in Plaintiffs against Defendant and 2) Plaintiffs have not alleged that Defendant breached a contract with them. The Court therefore grants Defendant's Motion to Dismiss with regard to Count II.

### 3. Misrepresentation and Breach of Duty of Good Faith & Fair Dealing

In Count III, Plaintiffs again makes the holder in due course/show-me-the-note argument, albeit in a slightly different way. Plaintiffs argue that Defendant did not have a right to request loan modification documentation or to actually modify the loan because Defendant did not possess the original Note and therefore was not a holder in due course. For the reasons stated in its discussion above of Count I's wrongful foreclosure arguments, the Court will grant the Motion to Dismiss Count III.

### 4. Fraud

Plaintiffs' Count IV fraud claim is just another iteration of the holder in due course/original Note argument. Plaintiffs allege that Defendant represented and stated to the Plaintiffs that Defendant owned the Note and/or that it had authority to modify the loan. For the reasons previously stated, the Court finds this argument has absolutely no merit. The Court therefore dismisses Count IV.

### 5. Breach of Fiduciary Duties

In Count V, Plaintiffs allege that Defendant undertook duties to negotiate with the Plaintiffs to modify their loan and that Defendant had a duty to inform Plaintiffs that Defendant did not "own the Deed of Trust or [N]ote." (Doc. #28, p.8.) First, Plaintiffs have not made any allegations demonstrating that Defendant was in a fiduciary relationship with them. Second, the Court once again rejects Plaintiffs' attempt to assert a holder in due course argument.

### 6. Conversion

In Count VI, Plaintiffs argue that Defendant has taken the Note and created a mortgage-backed security, thereby transferring title to the investors in the security and away from Defendant. Plaintiffs allege that Defendant unlawfully took the Property and sold it.

The undersigned previously has rejected a conversion theory in a mortgage foreclosure case. *Cervantes v. Countrywide Home Loans, Inc.*, 2009 WL 3157160 (D.Ariz. September 24, 2009). Plaintiffs allegations amount to conversion not of chattel or personal property, but real property. But Arizona has no tort of conversion of real property. *See Strawberry Water Co. v. Paulsen*, 207 P.3d 654, 659 (Ariz.Ct.App. 2008)(distinguishing different types of water rights and stating, "[W]ater rights are real property interests, and thus cannot be converted because they are not chattels."). The Court therefore grants the Motion to Dismiss with regard to Count VI.

### 7. Count VII

Plaintiffs did not allege a Count VII. The SAC skips from Count VI (Conversion) to Count VIII (Lack of Consideration).

### 8. Lack of Consideration

Plaintiffs denominated their Count VIII as "Lack of Consideration." (Doc. #28, p. 10.) They argue that Defendant did not provide any consideration for the conversion of the Note into a securitized investment instrument. "Lack of Consideration" is not an independent, cognizable legal claim. Plaintiffs have not alleged a contract between them and Defendant that lacked the requisite consideration. This claim therefore fails as a matter of

law and the Court will dismiss it.

### 9. Unjust Enrichment

In their final Count, Count IX, Plaintiffs argue that Wells Fargo was unjustly enriched by using the Note to create a mortgage-backed security investment vehicle. Plaintiffs allege, "The Defendant Wells Fargo has profited and stands to continue to profit from creating the MBS while preventing the Plaintiffs from contacting the true owners of the note in an effort to obtain a loan modification, workout plan, or other financial assistance." (Doc. #28, p.11.) The unjust enrichment claim seems to be just one more stab at the holder in due course argument. The Court has stated that the holder in due course argument in all its permutations is unavailing.

To the extent Plaintiffs attempt to state a true unjust enrichment claim under Arizona law, they cannot. One of the elements of an unjust enrichment claim is an absence of justification for the "enrichment" of the defendant and the "impoverishment" of the plaintiff. *Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Az. Ct. App. 1995). This Court already has found that the Deed of Trust allowed the original lender to sell the Note and Deed and that Defendant had the right to institute a trustee sale of the Property even if Defendant did not possess the original Note, so Plaintiffs cannot allege a lack of justification. Thus, they cannot state a claim for relief. The Court therefore grants the Motion to Dismiss Count IX.

Because the Court finds that Plaintiffs have failed to state a single cognizable legal claim, the Court will grant the Motion to Dismiss the Second Amended Complaint in its entirety.

Accordingly,

///
///
///
///
///

**IT IS ORDERED GRANTING** Defendant's Motion to Dismiss Second Amended Complaint (Doc. #39). The Clerk will dismiss this case.

DATED this 18th day of June, 2010.

James A. Teilborg
United States District Judge